1  ASIM DESAI  (SBN: 175402)
   adesai@grsm.com
2  MARGRET G. PARKE  (SBN:  126120)
   mparke@grsm.com
3  GORDON & REES LLP
   633 West Fifth Street, 52nd Floor
4  Los Angeles, CA 90071
   Telephone:  (213) 576-5000
5  Facsimile:  (213) 680-4470

6  Attorneys for Plaintiffs
   CERTAIN UNDERWRITERS AT LLOYDS, LONDON SUBSCRIBING TO
7  CERTIFICATE NO. SUA WSD50024-1801

8  GRETCHEN S. CARNER (SBN: 132877)
   gretchen.carner@clydeco.us
9  CLYDE & CO US LLP
   355 S. Grand Avenue, Suite 1400
10 Los Angeles, CA 90071
   Telephone: (213) 358-7600
11 Facsimile: (213) 358-7650

12 Attorneys for Plaintiff
   XL SPECIALTY INSURANCE COMPANY

13

14         UNITED STATES DISTRICT COURT

15        CENTRAL DISTRICT OF CALIFORNIA

16             WESTERN DIVISION

17

18 CERTAIN UNDERWRITERS AT          ) CASE NO. 2:21-CV-07845
   LLOYDS, LONDON SUBSCRIBING TO    )
19 CERTIFICATE NO. SUA WSD50024-    )
   1801, and XL SPECIALTY INSURANCE )
20 COMPANY                          ) COMPLAINT FOR
                                    ) DECLARATORY RELIEF AND
21              Plaintiffs,         ) REIMBURSEMENT OF
                                    ) DEFENSE EXPENSES
22      vs.                        )
                                    )
23 VOIP GUARDIAN, LLC, a            )
   Delaware limited liability company; )
24 VOIP GUARDIAN PARTNERS I,        )
   LLC, a Delaware limited liability )
25 company; VOIP GUARDIAN           )
   PARTNERS II, LLC, a Delaware     )
26 limited liability company; RODNEY )
   OMANOFF; OMANOFF                 )
27 AMERICA LLC, a Delaware limited  )
   liability company; OMANOFF       )
28 AMERICA TELECOM, LLC, a          )

                           -1-

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

| | |
|---|---|
| 1 | Delaware limited liability company;<br>CONTACTS & CONTRACTS, |
| 2 | INC., a Delaware corporation;<br>MUDMONTH, LLC, a Nevada |
| 3 | limited liability company;<br>PHILIPSON INTERNATIONAL, |
| 4 | LLC, a Delaware limited liability<br>company; RICHARD OMANOFF; |
| 5 | MARK PROTO; JOSEPH<br>RAHMAN aka YOUSSEF A. |
| 6 | RAHMAN; JOHN O. PHILIPSON;<br>and ADELA PHILIPSON |
| 7 | Defendants. |
| 8 | |

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

9   Plaintiffs, CERTAIN UNDERWRITERS AT LLOYDS, LONDON

10  SUBSCRIBING TO CERTIFICATE NO. SUA WSD50024-1801 ("D&O

11  Underwriters") and XL SPECIALTY INSURANCE COMPANY ("XL Specialty")

12  (D&O Underwriters and XL Specialty are referred to collectively as "Plaintiffs" or

13  "Insurers"), for their Complaint for Declaratory Relief and Reimbursement against

14  Defendants, VOIP GUARDIAN LLC ("VoIP Guardian"), VoIP GUARDIAN

15  PARTNERS I, LLC ("VoIP GP I" or "Debtor"), VOIP GUARDIAN PARTNERS

16  II, LLC ("VoIP GP II"), RODNEY OMANOFF ("Omanoff"), OMANOFF

17  AMERICA LLC ("Omanoff America"), OMANOFF AMERICA TELECOM, LLC

18  ("Omanoff America Telecom"), CONTACTS & CONTRACTS, INC. ("Contacts &

19  Contracts"), MUDMONTH, LLC ("Mudmonth"), PHILIPSON-INTERNATIONAL

20  LLC ("Philipson International"), RICHARD OMANOFF, MARK PROTO,

21  JOSEPH RAHMAN aka YOUSSEF A. RAHMAN ("Rahman"), JOHN O.

22  PHILIPSON ("J. Philipson"), and ADELA PHILIPSON ("A. Philipson"), allege as

23  follows:

24  **NATURE OF THE ACTION**

25  1.   This is an action, pursuant to 28 U.S.C. § 2201(a), requesting a

26  judgment declaring the respective rights and obligations of the parties in connection

27  with an actual controversy arising under two policies of insurance, issued by the

28  Insurers to VoIP Guardian as named insured.  The policies provide for primary and

excess management liability coverage, respectively.  Defendants contend they are entitled to coverage under the policies for three underlying lawsuits filed against them alleging a complex fraudulent scheme.

2.     VoIP Guardian provides accounts receivable factoring services to small "Tier 3" telecommunications companies that route international calls to larger "Tier 1" telecommunications companies. VoIP Guardian provides capital to the smaller telecoms by purchasing their accounts receivable at a discount, and realizes a return on its investment by collecting the full amount of the receivables from the Tier 1 carriers.

3.     Plaintiffs are informed and believe that VoIP Guardian provides such factoring services through its 100% owned subsidiary, VoIP GP 1, the Debtor in the Chapter 7 bankruptcy proceedings captioned *In re VoIP Guardian Partners I, LLP*, Case No. 2:19bk-12607-BR (Bankr. C.D. Cal.) (the "Bankruptcy Case").[1]

4.     To fund its factoring services, VoIP Guardian receives investment capital from various investment sources including funds that pool money from private investors.

5.     In one of the underlying actions, investors in VoIP Guardian allege that VoIP Guardian, a subsidiary and its directors and officers deliberately or recklessly mismanaged the investors' funds by engaging in a complex telecom factoring scheme with questionable foreign entities. They allege that a VoIP Guardian subsidiary financed the transactions of numerous smaller telecommunication companies despite red flags that should have put their directors and officers on notice that those companies were not legitimate entities.  They allege that, as a result, essentially all of the money invested in the subsidiary is now uncollectible.

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

---

[1] On September 10, 2021, the Bankruptcy Court granted Plaintiffs' motion for relief from the automatic stay under 11 U.S.C. § 362 to allow Plaintiffs to file this Complaint for Declaratory Relief and Reimbursement of Defense Expenses in the United States District Court for the Central District of California.  A copy of the Bankruptcy Court Order of September 10, 2021 is attached hereto as Exhibit G.

COMPLAINT FOR DECLARATORY RELIEF

6.     In two other underlying adversary proceedings filed in connection with the Bankruptcy Case, the Bankruptcy Trustee alleges that the Debtor's directors and officers mismanaged the Debtor's affairs through an ill-conceived telecom factoring scheme that resulted in significant investor losses for which the Trustee seeks recovery.  The trustee also seeks a declaration that VoIP GP II and VoIP GP I operate as a "common enterprise" and as such VoIP GP II is the alter ego of the Debtor, VoIP GP I.

7.     The Insurers dispute the contention that Defendants are entitled to coverage under their respective policies based on the express terms, conditions and limitations and seek a judgment declaring the respective rights and obligations of the parties under the policies.  Also, the D&O Underwriters have agreed to defend certain of the Insureds in the underlying actions under a full reservation of rights. The D&O Underwriters seek reimbursement from those Insureds for all non-covered defense fees, costs, expenses and indemnity that have been paid or may be paid on behalf of the Insureds in the underlying actions.

## PARTIES

8.     D&O Underwriters, severally subscribing to Certificate SUA WSD50024-1801 ("D&O" Policy") issued to VoIP Guardian, are members of syndicates that underwrite risks in the Lloyd's of London insurance marketplace. Such members are chartered under the laws of England and Wales.  Their principal places of business are in England.

9.     XL Specialty is a Delaware corporation with its principal place of business in Connecticut.  XL Specialty issued Excess Policy No. ELU157004-18 (the "Excess Policy") to VoIP Guardian; (the D&O Policy and Excess Policy collectively are referred to as "Policies").

10.     Defendant VoIP Guardian is a limited liability company organized under the laws of the State of Delaware with its principal place of business in New York.

COMPLAINT FOR DECLARATORY RELIEF

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

11.     Defendant VoIP GP I, the Debtor, is a limited liability company organized under the laws of the State of Delaware with its principal place of business in New York.  VoIP GP I is owned by VoIP Guardian.

12.     VoIP GP II is a limited liability company organized under the laws of the State of Delaware with its principal place of business in the State of Delaware.

13.     Defendant Omanoff, an individual, is a resident and citizen of the State of California.  Omanoff served as Chief Executive Officer of VoIP Guardian and Chief Executive Officer of the Debtor and is the sole member of Omanoff America. On information and belief, Omanoff also owns and or controls Omanoff America Telecom and Contacts and Contracts.

14.     Defendant Omanoff America Telecom is a limited liability company organized under the laws of the State of Delaware with its principal place of business in the State of Delaware.

15.     Defendant Omanoff America is a limited liability company organized under laws of the State of Delaware, with its principal place of business in the State of Florida.

16.     Defendant Contacts & Contracts is a limited liability company organized under the laws of the State of Delaware with its principal place of business in the State of Florida.

17.     Defendant Richard Omanoff, an individual, is Rodney Omanoff's father.  He is a resident and citizen of the State of New York.  Plaintiffs are informed and believe that Richard Omanoff is member of VoIP Guardian.

18.     Defendant Mudmonth is a limited liability company organized under the laws of the State of Nevada with its principal place of business in California. Mudmonth is owned by Mark Proto.

19.     Defendant Philipson International is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Florida.  On information and belief, Philipson International is owned by John O.

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Philipson.

20. Defendant Mark Proto, an individual, is a resident and citizen of the State of California. Plaintiffs are informed and believe that Mark Proto is an owner of VoIP Guardian and also served as a director or officer of VoIP Guardian.

21. Defendant Rahman, an individual, is a resident and citizen of the State of Florida. Plaintiffs are informed and believe that Rahman served as a director or officer of VoIP Guardian.

22. Defendant J. Philipson, an individual, is a resident and citizen of the State of Florida. Philipson served as the managing partner of VoIP Guardian and is sole member of Philipson International.

23. Plaintiffs are informed and believe that Defendant A. Philipson, an individual, is a resident and citizen of the State of Florida.

## JURISDICTION AND VENUE

24. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §1367, in that this case arises from and/or is related to a proceeding filed under title 11 of the United States Code, *In re VoIP Guardian Partners I, LLP*, Case No. 2:19bk-12607-BR (Bankr. C.D. Cal.).

25. Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §2201 permit the Insurers to seek a declaration from this Court as to the rights and obligations among and between the parties in relation to the insurance policies issued by the Insurers, including, but not limited to, whether the Insurers have an obligation to provide a defense to or indemnify any of the Defendants named in three underlying lawsuits.

26. Venue is proper because this dispute arises out of events that occurred in Los Angeles County and because the three underlying lawsuits are filed in the Central District of California.

/ / /

/ / /

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

## CLAIMS TENDERED BY
## DEFENDANTS UNDER THE POLICIES

27.     Defendants have demanded coverage under the Policies for a class action lawsuit action filed on April 1, 2019, in the United States District Court, Central District of California, captioned *Marcia Kosstrin Trust and Professional Home Improvements Inc. Retirement Plan v. Direct Lending Investments, LLC et al.*, Case No. 2:19-cv-02452 (the "Kosstrin Action").  The Insurers received notice of the Kosstrin Action on or about August 29, 2019.

28.     On March 10, 2019, VoIP GP I filed a petition under Chapter 7 in the Bankruptcy Case.  Defendants have demanded coverage under the Policies for two adversary actions filed by the bankruptcy trustee, Timothy Yoo, on March 10, 2021 ("Trustee's Actions").  The Insurers received notice of the Trustee's Actions on or about March 15, 2021.

## THE UNDERLYING ACTIONS

### The Kosstrin Action

29.     VoIP Guardian provides factoring financing to small, Tier 3 telecommunications companies that provide call routing services to larger, Tier 1 telecommunication companies.

30.     On April 1, 2019, the limited partners of an investment fund filed a class action complaint in the Kosstrin Action against Omanoff and executives involved in the management of the fund.  The Kosstrin plaintiffs allege that the fund invested in a subsidiary of VoIP Guardian, VoIP GP I.  The Kosstrin plaintiffs allege that the fund managers breached their fiduciary duties to the fund's partners by not accurately reporting the true condition, value and risk associated with an investment in VoIP Guardian and that the partners were deceived.  Against Omanoff, the Kosstrin plaintiffs allege a single count for aiding and abetting breach of fiduciary duties.  A copy of the Kosstrin Complaint is attached hereto as Exhibit A ("Kosstrin Complaint").

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-7-

31.     The Kosstrin Complaint alleges that VoIP Guardian used the money from the investment fund to purchase the accounts receivable of three small telecommunication companies at a discount.  After the three companies in which VoIP Guardian invested defaulted on their payments to VoIP Guardian, VoIP Guardian allegedly could not meet its own loan payment obligations to the fund on about $180 million.

32.     The Kosstrin Complaint alleges that fund managers were grossly negligent in their due diligence which led to the investment in VoIP GP I, because as early as February 2017, fund managers knew that Omanoff, a partner in VoIP Guardian, had been grossly negligent in a business similar to VoIP Guardian—Talking Capital.

33.     The Kosstrin Complaint alleges that Omanoff helped form Talking Capital and caused the company to invest and ultimately lose $8.5 million in Bolotel Ltd, a UK-based Tier 3 Carrier.  It alleges that Talking Capital and others filed suit against Omanoff, and Omanoff-related entities, in February 2017.  The Kosstrin plaintiffs claim the Talking Capital Action (defined below) was not timely or properly disclosed to them but should have been because the allegations in that suit were material to the Fund's investment in VoIP GP I, and had they known, they would have withdrawn their capital from VoIP GP I.

**Trustee's First Action**

34.     On March 10, 2021, in the Bankruptcy Case, the Trustee filed an adversary complaint, captioned *Timothy Yoo, Chapter 7 Trustee v. VoIP Guardian LLC et al.,* Adv. No. 2:21-ap-01044-BR ("Trustee's First Action").   Against Omanoff, Mark Proto, Rahman, and J. Philipson, the complaint includes counts alleging breach of fiduciary duty of care and loyalty "in prepetition management of the Debtor's telecom factoring business."  Against VoIP Guardian, other defendants affiliated with Omanoff—Omanoff America, Omanoff America Telecom, Contracts & Contacts, Mudmonth, Philipson International, Richard Omanoff and A.

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-8-

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Philipson—and others, the complaint seeks avoidance and recovery of fraudulent and preferential transfers. A copy of the operative First Amended Complaint filed in the Trustee's First Action is attached hereto as Exhibit B.

35.     The Complaint in the Trustee's First Action alleges that the directors and officers of the Debtor, VoIP GP I, deliberately or recklessly mismanaged the Debtor's affairs by engaging in a highly technical and complex telecom factoring business with questionable foreign entities.  It asserts the Debtor inexplicably financed the transactions of numerous questionable Tier 3 entities when, at the time, various red flags regarding those companies should have put the directors and officers on notice that they likely were not legitimate entities or not creditworthy.

36.     The Trustee's First Action alleges further that the Tier 3 and Tier 1 companies worked together to the detriment of the Debtor, and during a three-month period the Debtor lost over $160 million of its investors' funds.  The Trustee also alleges that the Debtor was insolvent from inception, never earned any profits, and the monies VoIP Guardian received were the product of the scheme to defraud the Debtor and its creditors.

### Trustee's Second Action

37.     On March 10, 2021, in the Bankruptcy Case, Trustee Timothy Yoo filed an adversary complaint, captioned *Timothy Yoo, Chapter 7 Trustee v. Wavecrest (UK) Ltd. et al.,* Adv. No. 2:21-ap-01046-BR ("Trustee's Second Action").  The complaint includes VoIP GP II as a defendant.  A copy of the Complaint filed in the Trustee's Second Action is attached hereto as Exhibit C.

38.     The Trustee alleges that in 2018, the Debtor entered into certain factoring agreements with Tier 3 telecoms pursuant to which it agreed to purchase the accounts receivable owed by a Tier 1 entity, Wavecrest (UK) Ltd. It allegedly did so despite red flags concerning Wavecrest's poor trade credit and financial ability to pay the amounts due.

/ / /

39.     The Trustee claims the Debtor has the right to collect, from the Tier 1 or Tier 3 companies and/or their guarantors, more than $14 million owed under the factoring agreements, for breach of contract and unjust enrichment.

40.     Against VoIP GP II, the Trustee seeks a declaratory judgment that VoIP GP II is the alter ego of the Debtor, VoIP GP I.  The complaint claims that, although VoIP GP II is identified in the agreements as the "factor" to whom funds are due, VoIP GP I and VoIP GP II are owned and controlled by the same individuals—Omanoff, Proto, Rahman, and J. Philipson—and operate as a "common enterprise."

**The Talking Capital Action**

41.     On February 24, 2017, in the Supreme Court of the State of New York, County of New York, Talking Capital, LLC and others filed a complaint in the lawsuit captioned *Talking Capital, LLC et al. v. Rodney Omanoff et al.*, Index No. 650973/2017 ( "Talking Capital Action").  A copy of the operative second amended complaint in the Talking Capital Action is attached hereto as Exhibit D ("Talking Capital Complaint").

42.     The Talking Capital Complaint alleges that Talking Capital was formed to provide trade financing and factoring services. It alleges that in 2015, Omanoff, Mark Proto and Rahman caused Talking Capital to suffer substantial losses when they imprudently made a reckless lending decision to finance a Tier 3 European service provider known as Bolotel Limited ("Bolotel") leading to a loss of $8.5 million to investors. The Talking Capital plaintiffs claimed that Omanoff, Mark Proto and Rahman were grossly negligent by failing to conduct any due diligence or investigate the history of Bolotel and that the documents tendered during due diligence did not warrant a conclusion that Bolotel was even an operating company.

43.     The Talking Capital Complaint includes Causes of Action for Breach of Contract, Breach of Fiduciary Duty, Aiding and Abetting Breaches of Fiduciary Duty, Breach of Duty of Care, Misappropriation of Corporate Opportunity, Tortious Interference with Contract, Unjust Enrichment, Accounting and relief against VoIP

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-10-

Guardian, Omanoff, Mark Proto, Rahman, VoIP GP I and other entities controlled by Omanoff.

### THE POLICIES

44.     D&O Underwriters issued the D&O Policy to named insured VoIP Guardian, Certificate No. SUA WSD50024-1801, effective September 1, 2018 through September 1, 2019.  A true and accurate copy of the D&O Policy is attached hereto as Exhibit E.

45.     The D&O Policy provides the following insuring agreements:

### I.     INSURING AGREEMENTS

A.     Underwriters shall pay on behalf of the **INSURED PERSONS LOSS** resulting from any **CLAIM** first made against the **INSURED PERSONS** during the **POLICY PERIOD** for a **WRONGFUL ACT** that occurred on or after the Retroactive Date stated in Item 6 and before September 01, 2019 and reported to Underwriters in accordance with Section VI.A. of the Policy, except and to the extent the **COMPANY** is required or permitted to indemnify the **INSURED PERSON(S)** for such **LOSS**.

B.     Underwriters shall pay on behalf of the **COMPANY LOSS** which the **COMPANY** is required or permitted to pay as indemnification to any **INSURED PERSONS** from any **CLAIM** first made against the **INSURED PERSONS** during the **POLICY PERIOD** for a **WRONGFUL ACT** that occurred on or after the Retroactive Date stated in Item 6 and before September 01, 2019 and reported to Underwriters in accordance with Section VI. A. of the Policy.

C.     Underwriters shall pay on behalf of the **COMPANY LOSS** resulting from a **CLAIM** first made against the **COMPANY** during the **POLICY PERIOD** for a **WRONGFUL ACT** that occurred on or after the Retroactive Date stated in Item 6 and before September 01, 2019 and reported to Underwriters in accordance with Section VI. of the Policy.

46.     XL Specialty issued the Excess Policy to named insured, VoIP Guardian LLC, Policy No. ELU157004-18, effective for the period September 1,

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1  2018 to September 1, 2019, and extended to September 1, 2020.  A true and accurate

2  copy of the Excess Policy is attached hereto as Exhibit F.

3      47.    The Excess Policy applies excess of the D&O Policy.  The coverage

4  provided by the Excess Policy will attach only after all of the Underlying Insurance

5  has been exhausted by the actual payment of covered amounts under the Underlying

6  Insurance.    In that event, coverage under the Excess Policy will apply in

7  conformance with the terms, conditions, endorsements and warranties of the D&O

8  Policy and the Excess Policy.  The Underlying Insurance has been identified in the

9  Excess Policy as the D&O Policy.

10  ### FIRST CLAIM FOR RELIEF

11  **For a Declaration of No Duty to Defend or Indemnify**

12  **Claims Not First Made During Policy Period**

13      48.    The Insurers reallege and incorporate by reference paragraphs 1

14  through 47, inclusive as though set forth in full herein.

15      49.    Pursuant to the Insuring Agreement of the D&O Policy, coverage

16  applies to "**LOSS** resulting from any **CLAIM** first made against the **INSURED**

17  **PERSONS** during the **POLICY PERIOD**."

18      50.    Under the Condition V.C of the D&O Policy, Claims that arise out of

19  "Interrelated Wrongful Acts" are treated as a single Claim and shall be considered

20  first made when the earliest Claim was first made.

21      51.    The D&O Policy defines the term **"INTERRELATED WRONGFUL**

22  **ACTS"** to mean **WRONGFUL ACTS** that have as a common nexus any fact,

23  circumstance, situation, event or transaction or series of facts, circumstances,

24  situations, events or transactions.

25      52.    The Excess Policy follows the form of the D&O Policy with respect to

26  the terms and conditions set forth in paragraphs 45, and 49 through 51.

27      53.    The Kosstrin Action arises from the same facts and circumstances as

28  the Talking Capital Action and thus alleges **INTERRELATED WRONGFUL**

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

**ACTS** under the Policies.  As the Kosstrin Action is interrelated with the Talking Capital Action, the Kosstrin Action is deemed to be a Claim that was first made on February 24, 2017, when the Talking Capital Action was filed, and before the Policies incepted in 2018.

54.    The Trustee's First Action arises from the same facts and circumstances as the Talking Capital Action and thus alleges **INTERRELATED WRONGFUL ACTS** under the D&O Policy.  As the Trustee's First Action is interrelated with the Talking Capital Action, the Trustee's First Action is deemed to be a Claim that was first made on February 24, 2017, when the Talking Capital Action was filed, and before the Policies incepted in 2018.

55.    The Trustee's Second Action arises from the same facts and circumstances as the Talking Capital Action and thus alleges **INTERRELATED WRONGFUL ACTS** under the Policies. As the Trustee's Second Action is interrelated with the Talking Capital Action, the Trustee's Second Action is deemed to be a Claim that was first made on February 24, 2017, when the Talking Capital Action was filed, and before the Policies incepted in 2018.

56.    The Kosstrin Action, the Trustee's First Action and the Trustee's Second Action are not Claims first made during the **POLICY PERIOD**, and therefore are not covered because they are not within the scope of the Policies' Insuring Agreements.

57.    A present and actual controversy between the Insurers and Defendants exists in that the Insurers contend that they have no duty to defend or indemnify the Defendants in connection with the Kosstrin Action, the Trustee's First Action and the Trustee's Second Action. Defendants contend that coverage exists.

58.    The Insurers request a declaration from this Court that they have no obligation to pay Defense Costs or indemnify the Defendants in connection with the Kosstrin Action, the Trustee's First Action or the Trustee's Second Action because the lawsuits allege wrongful acts that are interrelated to the wrongful acts alleged in

-13-

the Talking Capital Action and therefore are deemed to be claims first made prior to the inception of the Policies.

## SECOND CLAIM FOR RELIEF

### For a Declaration of No Duty to Defend or Indemnify

### Specific Claim Exclusion

59.     The Insurers reallege and incorporate by reference paragraphs 1 through 58, inclusive as though set forth in full herein.

60.     The D&O Policy includes the following Specific Claim Exclusion:

### SPECIFIC CLAIM EXCLUSION

\* \* \*

To be attached to and form part of Policy Number: **SUA WSD50024-1801**

In favor of: **VoIP Guardian**

In consideration of the premium paid, it is hereby understood and agreed that this Policy does not apply to LOSS directly or indirectly based upon or arising out of or resulting from any CLAIM previously submitted to Underwriters or any other Insurer or for any CLAIM that should have been or could have been submitted if no applicable insurance was in force at the time, or for any CLAIM involving similar or interrelated matters, facts, circumstances, situations, events or transactions described in the application or previous applications, attachments or any other descriptive information submitted to Underwriters or prior Insurers including but not limited to:

**Talking Capital, LLC/Brad Reifler**

and any other Claims or information described in this endorsement whether attached to this endorsement or not.

The effective date of this endorsement is September 01, 2018.

\* \* \*

61.     The Excess Policy follows the form of the D&O Policy with respect to the Specific Claim Exclusion.

62.     Pursuant to the Specific Claim Endorsement of the D&O Policy, coverage does not apply to any Loss directly or indirectly based on or arising from any Claim involving similar or interrelated matters, facts, circumstances, situations,

-14-

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

events or transactions, including but not limited to Talking Capital, LLC/Brad Reifler.

63. The Kosstrin Action, the Trustee's First Action and the Trustee's Second Action, and each of them, arise from the same facts and circumstances as, and are interrelated with, the Talking Capital Action and therefore the Policies exclude coverage for those Claims.

64. A present and actual controversy between the Insurers and Defendants exists in that the Insurers contend that they have no duty to defend or indemnify the Defendants in connection with the Kosstrin Action, the Trustee's First Action or the Trustee's Second Action based on the Specific Claim Exclusion. Defendants contend that coverage exists.

65. The Insurers request a declaration from this Court that they have no obligation to pay Defense Costs or indemnify the Defendants in connection with the Kosstrin Action, the Trustee's First Action and the Trustee's Second Action based on the Specific Claim Exclusion.

## **THIRD CLAIM FOR RELIEF**

### **For a Declaration of No Duty to Defend or Indemnify**

### **Pending and/or Prior Litigation Exclusion In Excess Policy**

66. XL Specialty realleges and incorporates by reference paragraphs 1 through 65, inclusive as though set forth in full herein.

67. The Excess Policy includes the following Pending and/or Prior Litigation Exclusion:

In consideration of the premium charged, no coverage will be available under this Policy for claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or wrongful act, underlying or alleged in any prior and/or pending litigation or

COMPLAINT FOR DECLARATORY RELIEF

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

administrative or regulatory proceeding or arbitration which was brought prior to August 06, 2018.

68.     Pursuant to the Pending and/or Prior Litigation Exclusion, the Excess Policy does not provide coverage for any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or wrongful act, underlying or alleged in any prior and/or pending litigation which was brought prior to August 06, 2018.  The Talking Capital Action was filed on February 24, 2017.

69.     The Kosstrin Action, the Trustee's First Action and the Trustee's Second Action, and each of them, arise out of the same facts, circumstances, situations, transactions, events or wrongful acts at issue in the Talking Capital Action and therefore the Prior and Pending Litigation Exclusion bars coverage for those Claims under the Excess Policy.

70.     A present and actual controversy between XL Specialty and Defendants exists in that XL Specialty contends that it has no duty to defend or indemnify Defendants in the Kosstrin Action, the Trustee's First Action or the Trustee's Second Action based on the Pending and/or Prior Litigation Exclusion. Defendants contend that coverage exists.

71.     XL Specialty requests a declaration from this Court that XL Specialty has no obligation to defend or indemnify Defendants in connection with the Kosstrin Action, the Trustee's First Action and the Trustee's Second Action based on the Specific Claim Exclusion.

### FOURTH CLAIM FOR RELIEF
**For a Declaration of No Duty to Defend or Indemnify**
**Professional Services Exclusion**

72.     The Insurers reallege and incorporate by reference paragraphs 1 through 71, inclusive as though set forth in full herein.

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

73.     The D&O Policy includes the following professional services Exclusion:

> This Policy does not apply to **LOSS** in connection with any **CLAIM**:… based upon or directly or indirectly arising out of or resulting from or in any way involving the rendering of or failure to render professional services[.]

74.     The Excess Policy follows the form of the D&O Policy with respect to the Professional Services Exclusion.

75.     The Kosstrin Action against Omanoff, and the Trustee's First Action and the Trustee's Second Action, and each of them, arises from VOIP Guardian's performance of professional services, and therefore the Policies exclude coverage for those Claims.

76.     A present and actual controversy between D&O Underwriters and Defendants exists in that D&O Underwriters contend that they have no duty to defend or indemnify Defendants in the Kosstrin Action, the Trustee's First Action or the Trustee's Second Action based on the Professional Services Exclusion. Defendants contend that coverage exists.

77.     The Insurers request a declaration from this Court that they have no obligation to pay Defense Costs or indemnify the Defendants in connection with the Kosstrin Action, the Trustee's First Action or the Trustee's Second Action based on the Professional Services Exclusion.

## FIFTH CLAIM FOR RELIEF

**For a Declaration of No Duty to Defend or Indemnify**

**Defendants Omanoff America, Omanoff America Telecom,**

**Contacts & Contracts, Mudmonth, Philipson International, A.**

**Philipson and Richard Omanoff Who Are Not Insured Persons**

78.     The Insurers reallege and incorporate by reference paragraphs 1

1   through 77, inclusive as though set forth in full herein.

2      79.   The D&O Policy defines "**INSURED PERSON**" as follows:

3         **D.   "INSURED PERSON"** means 1) any past, present or
4   future directors, officers, partners, or **EMPLOYEES** of the
    **COMPANY** while acting within the scope of their duties as such; and
5   2) the executors, heirs, legal representatives or assigns of each
6   **INSURED** or otherwise insured herein in the event of his or her death,
    incompetency, insolvency or bankruptcy.

7      80.   The Excess Policy follows the form of the D&O Policy with respect to
8   the definition of **"INSURED PERSON"**.

9      81.   Defendants Omanoff America, Omanoff America Telecom, Contacts
10  & Contracts, Mudmonth, Richard Omanoff, A. Philipson and Philipson International
11  are not past, present or future directors, officers, partners, or Employees of VoIP
12  Guardian and, therefore, are not **INSURED PERSONS** under the Policies.  As a
13  result, the Policies do not provide coverage for such Defendants.

14     82.   A present and actual controversy between the Insurers and Defendants
15  Omanoff America, Omanoff America Telecom, Contacts & Contracts, Mudmonth,
16  Philipson International, A. Philipson and Richard Omanoff exists in that the Insurers
17  contend that they have no duty to defend or indemnify Defendants Omanoff
18  America, Omanoff America Telecom, Contacts & Contracts, Mudmonth, Philipson
19  International, A. Philipson and Richard Omanoff in connection with the Kosstrin
20  Action, the Trustee's First Action or the Trustee's Second Action because none
21  qualify as **INSURED PERSONS** as that term is defined under the Policies.
22  Defendants Omanoff America, Omanoff America Telecom, Contacts & Contracts,
23  Mudmonth, Philipson International, A. Philipson and Richard Omanoff contend that
24  coverage exists.

25     83.   The Insurers request a declaration from this Court that they have no
26  duty to defend or indemnify Defendants Omanoff America, Omanoff America
27  Telecom, Contacts & Contracts, Mudmonth, Philipson International, A. Philipson

28

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-18-

and Richard Omanoff in connection with the Kosstrin Action, the Trustee's First Action or the Trustee's Second Action because none qualify as **INSURED PERSONS** as that term is defined in the D&O Policy.

## SIXTH CLAIM FOR RELIEF

### D&O Underwriters' Claim for Reimbursement
### of Defense Costs Against All Defendants

84.     D&O Underwriters reallege and incorporate by reference paragraphs 1 through 88, inclusive as though set forth in full herein.

85.     Under a reservation of rights, including, but not limited to, the right to seek reimbursement of uncovered attorney's fees and costs of suit, D&O Underwriters have incurred, and continue to incur, expenses associated with defending Omanoff (in the Kosstrin Action; Trustee's First Action), VoIP GP II (in the Trustee's Second Action), and VoIP Guardian and J. Philipson (in the Trustee's First Action).

86.     Because the D&O Underwriters have never had a duty to defend Omanoff with respect to the Kosstrin Action, or to provide a defense to Omanoff under a reservation of rights with regard to non-covered claims or damages, Omanoff must reimburse the fees and costs that the D&O Underwriters have incurred in defending Omanoff against the Kosstrin Action for claims or damages that are not covered or are excluded under the D&O Policy, including, but not limited to, attorney's fees and costs of suit.  D&O Underwriters seek a judicial determination of the costs and fees incurred for the defense of Omanoff with respect to the Kosstrin Action that were never potentially covered and reimbursement of such fees and costs from Omanoff as authorized by *Buss v. Superior Court*, 16 Cal.4th 35 (1997).

87.     Because D&O Underwriters have never had a duty to defend VoIP GP II with respect to the Trustee's Second Action, or to provide a defense to VoIP GP II under a reservation of rights with regard to non-covered claims or damages, VoIP GP II must reimburse the fees and costs that D&O Underwriters have incurred in

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

defending VoIP GP II against the Trustee's Second Action for claims or damages that are not covered or are excluded under the D&O Policy, including, but not limited to, attorney's fees and costs of suit. D&O Underwriters seek a judicial determination of the costs and fees incurred for the defense of VoIP GP II with respect to the Trustee's Second Action that were never potentially covered and reimbursement of such fees and costs from VoIP GP II as authorized by *Buss v. Superior Court*, 16 Cal.4th 35 (1997).

88.     Because the D&O Underwriters have never had a duty to defend Omanoff, VoIP Guardian or J. Philipson with respect to the Trustee's First Action, or provide a defense to those defendants under a reservation of rights with regard to non-covered claims or damages, Omanoff, VoIP Guardian and J. Philipson must reimburse the fees and costs that D&O Underwriters have incurred in defending them against the Trustee's First Action for claims or damages that are not covered or are excluded under the D&O Policy, including, but not limited to, attorney's fees and costs of suit. D&O Underwriters seek a judicial determination of the fees and costs incurred for the defense of the aforementioned Defendants with respect to the Trustee's First Action that were never potentially covered and reimbursement of such fees and costs from the aforementioned Defendants as authorized by *Buss v. Superior Court*, 16 Cal.4th 35 (1997).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for a judgment against Defendants as follows:

**As to the FIRST CLAIM FOR RELIEF**:

1.     For a judicial declaration that the Insurers have no duty to defend or indemnify Defendants in the Kosstrin Action, the Trustee's First Action and the Trustee's Second Action because they are interrelated to the Talking Capital Action which was first made prior to the inception of the D&O Policy.

**As to the SECOND CLAIM FOR RELIEF**:

2.     For a judicial declaration that the Insurers have no duty to defend or

-20-

indemnify Defendants in the Kosstrin Action, the Trustee's First Action and the Trustee's Second Action because the Specific Claim Exclusion in the D&O Policy applies to exclude coverage.

**As to the THIRD CLAIM FOR RELIEF**:

3.      For a judicial declaration that the Insurers have no duty to defend or indemnify Defendants in the Kosstrin Action, the Trustee's First Action and the Trustee's Second Action because the Professional Services Exclusion in the D&O Policy applies to exclude coverage.

**As to the FOURTH CLAIM FOR RELIEF**:

4.      For a judicial declaration that XL Specialty has no duty to defend or indemnify Defendants in the Kosstrin Action, the Trustee's First Action and the Trustee's Second Action because the Pending and/or Prior Litigation Exclusion in the Excess Policy applies to exclude coverage.

**As to the FIFTH CLAIM FOR RELIEF**:

5.      For a judicial declaration that the Insurers have no duty to defend or indemnify Defendants Omanoff America, Omanoff America Telecom, Contacts & Contracts, Mudmonth, Philipson International, A. Philipson and Richard Omanoff in the Kosstrin Action, the Trustee's First Action or the Trustee's Second Action because they are not **INSURED PERSONS** under the terms of the D&O Policy.

**As to the SIXTH CLAIM FOR RELIEF**:

7.      For an order requiring Defendant Omanoff to reimburse D&O Underwriters for all Defense Costs paid by D&O Underwriters in connection with the Kosstrin Action;

8.      For an order requiring Defendants VoIP Guardian, Omanoff and J. Philipson to reimburse D&O Underwriters for all Defense Costs paid by D&O Underwriters in connection with the Trustee's First Action;

9.      For an order requiring Defendant VoIP GP II to reimburse D&O Underwriters for all Defense Costs paid by D&O Underwriters in connection with

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-21-

1     the Trustee's Second Action;

2          10.     For an award of all Costs incurred herein; and

3          11.     For such other relief as this Court shall deem just and appropriate.

4

5     Dated: October 1, 2021                    GORDON & REES LLP

6

7                                     By:    /s/ Margret G. Parke
                                             Asim K. Desai
8                                            Margret G. Parke
                                             Attorneys for Plaintiffs
9                                            CERTAIN UNDERWRITERS
                                             AT LLOYDS, LONDON
10                                           SUBSCRIBING TO
                                             CERTIFICATE NO. SUA
11                                           WSD50024-1801
12

13    Dated: October 1, 2021                    CLYDE & CO. US LLP

14

15

16                                    By:    /s/ Gretchen S. Carner
                                             Gretchen S. Carner
17                                           Attorney for Plaintiff,
                                             XL Specialty Insurance Company
18

19

20

21

22

23

24

25

26

27

28

**Gordon & Rees LLP**
**633 West Fifth Street, 52nd Floor**
**Los Angeles, CA 90071**

-22-
COMPLAINT FOR DECLARATORY RELIEF